# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert M. Dow, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 06 C 5907 | **DATE** | 2/24/2011 |
| **CASE TITLE** | Sawyer, et al. vs. Shinseki | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, Defendant's motion for reconsideration [129] is granted in part and denied in part. Defendant's motion is granted solely for the purpose of correcting one line in the Court's memorandum opinion and order of 11/1/2010 [126]. The Court strikes the following sentence on page 59 of its opinion: "Looming large over all of this is the fact that only three officers were disciplined during Brown's tenure as Chief of Police at JBVA – Green, Steele, and Gustafson – and all three have engaged in EEO activity against Brown." In its place, the Court inserts the following sentence: "Looming large over all of this is the fact that three officers who were disciplined during Brown's tenure as Chief of Police at JBVA – Green, Steele, and Gustafson – have either engaged in EEO activity against Brown or crossed Brown during their employment." The remainder of Defendant's motion for reconsideration is denied. This case is set for further status on 3/15/2011 at 9:30 a.m.

■[ For further details see text below.]   Docketing to mail notices. Notices mailed by Judicial staff.

# STATEMENT

On November 1, 2010, the Court entered a memorandum opinion and order [126] that granted in part and denied in part Defendant's motions for summary judgment. As a result of the Court's opinion, three Plaintiffs–Latasha Sawyer, Darren Steele, and Lawrence Green–have remaining claims. The remaining claims include Sawyer's claim for hostile work environment-sexual harassment in violation of Title VII (Count II); Green's claim for retaliation in violation of Title VII (Count VI); and Steele's claim for retaliation in violation of Title VII (Count IV). The Court granted Defendant's motion for summary judgment [92] in its entirety as to Plaintiff Gustafson's claims.

On December 2, 2010, Defendant filed a motion for reconsideration [129]. Because the Court's November 1 opinion did not dispose of this case in its entirety, the Court reviews Defendant's motion for reconsideration under Federal Rule of Civil Procedure 54(b), which states in relevant part: "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Accordingly, under Rule 54(b), the Court may exercise its inherent authority to reconsider its interlocutory orders because such orders may be revised at any time before the Court enters a final judgment. See *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 12 (1983) ("every order short of a final decree is subject to reopening at the discretion of the district

| STATEMENT |
|---|

judge"); *Sims v. EGA Prods., Inc.,* 475 F.3d 865, 870 (7th Cir. 2007) ("nonfinal orders are generally modifiable"). However, motions for reconsideration under Rule 54(b) serve the limited function of correcting manifest errors of law or fact. See *Rothwell Cotton Co. v. Rosenthal & Co.,* 827 F.2d 246, 251 (7th Cir. 1987); *Zurich Capital Mkt., Inc. v. Coglianese,* 383 F. Supp. 2d 1041, 1045 (N.D. Ill. 2005). "A 'manifest error' is not demonstrated by the disappointment of the losing party," instead it "is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metropolitan Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000); see also *Bilek v. American Home Mortg. Servicing*, 2010 WL 3306912, at *1 (N.D. Ill. Aug. 19, 2010).

In Defendant's motion, he correctly points out language in the Court's opinion that technically was a misstatement. On page 59 of the Court's opinion, the Court stated as follows: "Looming large over all of this is the fact that only three officers were disciplined during Brown's tenure as Chief of Police at JBVA – Green, Steele, and Gustafson – and all three have engaged in EEO activity against Brown." However, after careful consideration, the Court later found Gustafson's contention that she had engaged in protected EEO activity as taking "things one step too far" by trying to characterize her participation in the VA's interdisciplinary AIB proceedings as EEO activity. See [126] at 60-61.

It is clear from the record that Gustafson participated in the VA's interdisciplinary AIB proceedings, refused to speak out against Steele, and, taking the facts in the light most favorable to Plaintiffs, was pressured to change her statement regarding Steele. It is a reasonable inference from viewing the facts in this light that Gustafson incurred the wrath of Brown by refusing to testify against Steele. That certainly is Plaintiffs' position, and nothing that Defendant submitted in his summary judgment materials refuted this inference. Thus, the perception is that Gustafson, like Steele and Greene, refused to fall in line with Brown and was later punished for it. Even if her refusal and suspension cannot serve as the basis for a retaliation claim, the circumstances surrounding these instances can be considered as circumstantial evidence for Steele and Greene. Thus, the Court amends its opinion to state as follows: "Looming large over all of this is the fact that three officers who were disciplined during Brown's tenure as Chief of Police at JBVA – Green, Steele, and Gustafson – have either engaged in EEO activity against Brown or crossed Brown during their employment."

That sentence–both as stricken and as amended–does not analyze the similarly situated prong under the indirect method. Rather, the sentence conveys an examination of such evidence as part of Plaintiffs' "mosaic of circumstantial evidence" showing a causal connection under the direct method. Such circumstantial evidence may include "suspicious timing, ambiguous statements, and patterns demonstrating different treatment of similarly situated employees." *Sherill v. Potter*, 2008 WL 4086980, at *5 (N.D. Ill. Aug. 25, 2008) (quoting *Nichols v. Southern Ill. Univ.*, 510 F.3d 772, 782 (7th Cir. 2007)). The perceived link between the three Plaintiffs is just one of many factors that the Court considered as establishing a causal connection between both Steele's and Green's protected activities and the adverse employment actions taken against them. Taking the facts in the light most favorable to Plaintiffs, both Steele and Green had enough factual evidence to establish a case for retaliation, especially given that the Court did not have the benefit of the additional arguments and facts that Defendant puts forth in his motion for reconsideration. While Defendant correctly points out that this Court determined that Gustafson's testimony to the AIB proceeding did not rise to the level of participating in a Title VII investigation, Brown's discipline of Gustafson, taken in conjunction with the retaliatory actions taken against Steele and Green, still shows a pattern of adverse actions taken against individuals who crossed Brown. Such a "pattern" can be considered as circumstantial evidence under the direct method. See *Sherill,* 2008 WL 4086980 at *5.

As to the remainder of Defendant's motion for reconsideration, Defendant acknowledges that he failed to file reply briefs or responses to Steele's and Green's 56.1 statements, but he contends that his reply briefs should now be considered "so that several issues may be resolved before trial." Motion at 4. Defendant maintains that "a

series of compounded errors" prevented him from filing his reply briefs. Under Rule 6(b), courts have discretion to forgive missed deadlines by reason of "excusable neglect." The Supreme Court has held that the standard of excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include * * * the danger of prejudice to the [Plaintiffs], the length of the delay and its potential impact on judicial proceedings, the reasons for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993) (citation omitted).

In this instance, Defendant has not demonstrated "excusable" neglect. First, the prejudice to Plaintiffs would be great. Summary judgment already has been considered by the Court (at Defendant's request), and the Court has issued an extensive 68 page opinion outlining its decision based upon the facts and law presented by the parties during the lengthy briefing schedule allotted. While Defendant maintains that he is not attempting to get a "second bit at the apple," he is attempting to do just that. The facts and law of the case have not changed; rather, Defendant now is seeking to respond to factual issues that Plaintiffs raised in their Rule 56.1 statements and make arguments that counter the positions taken by Plaintiffs in their timely-filed responses. These factual and legal responses were available to Defendant at the time his replies were due yet he did not bring them to the Court's attention at that time. Thus, in essence, Defendant *is* trying to re-litigate issues already decided, at the expense of Plaintiffs, who filed volumes of materials in a timely fashion, and this Court, which gave all of these issues careful consideration before issuing its 68-page opinion.

Second, the length of delay was substantial in this case. A brief review of the docket shows that Defendant's summary judgment motions were filed in February 2009, Plaintiffs' responses were filed on May 29, 2009, and Defendant filed a response to Sawyer's Local Rule 56.1 Statement on July 30, 2009. Defendant now is seeking to file his reply briefs more than a year and a half after they were originally due. Based on this extensive delay and the time already put into this case, allowing Defendant to interject further evidence at this stage would substantially hinder the judicial proceedings in this case. The Court already has devoted substantial resources to parsing through the numerous legal and factual issues raised at the summary judgment stage of the case. Allowing Defendant to raise previously litigated issues at this late date would lead to further substantial delay.

Lastly, the reasons for the delay were in direct control of Defendant. On July 1, 2010, the Court granted the Defendants' motion for extension of time to file his reply briefs. After the extension was granted, Defendant filed a response to Sawyer's Local Rule 56.1 Statement on July 30, 2009, but failed to file any further replies to the Plaintiffs' responses and failed to file any reply briefs. Defendant's July 30 filing makes clear that Defendant was aware of the deadline on July 29, 2009, regardless of the Court's docket entry on July 20, 2009–which struck and then reinstated the motions *instanter* in view of the numerous extensions of the briefing schedule that the Court granted as a result of the number of parties and the cumulative length of the briefs. Although Defendant's filing was one day after the court-ordered deadline of July 29, the filing demonstrates an awareness of the July 29 deadline. And if there was any confusion regarding the status of Defendant's own summary judgment motions, there was more than enough time for Defendant to seek guidance from the Court as to the status of the summary judgment motions. As such, the docket reflects that the Defendant was aware of the deadline for the reply briefs as to all Plaintiffs – which was extended to July 29 at the request of Defendant [see 117] – and simply failed to take appropriate action to file timely responses as to certain Defendants or seek a further extension of the due date.

At the end of the day, the Court whole-heartedly agrees that Defendant's reply briefs would have been helpful to the Court in deciding the issues presented by Defendant's summary judgment motions, and may have helped to clarify the issues for trial. But to give Defendant leave to file these briefs now, after the parties and the Court have invested substantial time and resources to resolving the issues without the benefit of Defendant's briefs, is

| STATEMENT |
|---|

simply not fair either to Plaintiffs or the Court. It is well-established that motions for reconsideration "do not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior" to the district court's ruling. See *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). As the Seventh Circuit has said "many times before, a motion for summary judgment requires the responding party to come forward with the evidence that it has–it is 'the put up or shut up' moment in a lawsuit." See *Eberts v. Goderstad*, 569 F.3d 757, 766-67 (7th Cir. 2009) (additional citations omitted). In sum, it simply is too late to accept Defendant's new offerings at this late date. See, *e.g.*, *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) (holding that district court "acted well within its discretion" in strictly enforcing its deadlines on summary judgment briefing).

Finally, although the Court has declined to consider Defendant's tardy submission of reply briefs at the summary judgment stage, those submissions remain at least potentially useful in regard to narrowing or clarifying the matters remaining in dispute between the parties. The parties would do well to evaluate how the arguments now advanced by Defendant likely would play out at trial as they consider their options for resolving the case going forward. At the next status conference, the Court will inquire whether the parties believe that a settlement conference may be worthwhile at this time.

**III.    Conclusion**

For these reasons, the Court grants in part and denies in part Defendant's motion for reconsideration [129]. Defendant's motion is granted solely for the purpose of correcting one line in the Court's memorandum opinion and order of 11/1/2010 [126]. The Court strikes the following sentence on page 59 of its opinion: "Looming large over all of this is the fact that only three officers were disciplined during Brown's tenure as Chief of Police at JBVA – Green, Steele, and Gustafson – and all three have engaged in EEO activity against Brown." In its place, the Court inserts the following sentence: "Looming large over all of this is the fact that three officers who were disciplined during Brown's tenure as Chief of Police at JBVA – Green, Steele, and Gustafson – have either engaged in EEO activity against Brown or crossed Brown during their employment." The remainder of Defendant's motion for reconsideration is denied. This case is set for further status on 3/15/2011 at 9:30 a.m.